### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 00-6111-CIV-(DIMITROULEAS/Johnson)**

TURNBERRY CHARTERS, INC.

    Plaintiff,

vs.

INTERNATIONAL PAPER COMPANY

    Defendant.

_____/

### INTERNATIONAL PAPER COMPANY'S MOTION TO STRIKE PLAINTIFF'S COMPLAINT OR, ALTERNATIVELY, FOR A JURY INSTRUCTION REGARDING SPOLIATION OF EVIDENCE <u>AND INCORPORATED MEMORANDUM OF LAW</u>

Defendant, International Paper Company ("IP"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 37, Local Rule 7.1, *and other applicable law*, files this, its Motion to Strike Plaintiff Turnberry Charters, Inc.'s ("Turnberry") Complaint, or Alternatively, for a Jury Instruction Regarding Spoliation of Evidence, and Incorporated Memorandum of Law.

### *INTRODUCTION*

During the course of this litigation, IP made numerous requests to Turnberry for various categories of documents going to the heart of the pending dispute. Notwithstanding, Turnberry, and its counsel, permitted the most knowledgeable Turnberry employee to destroy *all* of the notes he produced in the scope of his employment, relating to the dispute herein. This act of destruction works a severe injustice against IP, who is now forever deprived of highly relevant documents that



may have completely exonerated IP from any alleged wrongdoing. Such egregious action warrants the striking of Turnberry's claims against IP. Alternatively, IP is entitled to a negative inference jury instruction; to wit, that the documents were destroyed because they contained facts disfavorable to Turnberry's position.

### *STATEMENT OF FACTS*

The focal issue in this case is whether, on or about June 19, 1999, IP contracted to sell Turnberry a Challenger CL600 aircraft (the "Plane"); and if so, whether IP breached that contract. The crux of Turnberry's averments arise out of a June 19, 1999 letter, which Turnberry incorrectly claims was a contract.[1] As a component of its defense, IP submits that the Letter, solely drafted by Turnberry's employee, Dennis Lainey[2] ("Mr. Lainey"), represents merely a memorialization of then-continuing negotiations between the parties.[3] Moreover, such interpretation was Mr. Lainey's intent in drafting the Letter.

As part of its efforts at substantiating its defense, on July 20, 2000, the undersigned served upon Turnberry its Request for Production. A copy thereof is attached hereto as Exhibit 3. Therein, IP sought, among others, the following:

---

[1] A copy of this letter is attached to Turnberry's complaint as Exhibit A, and is attached hereto as Exhibit 1 (the "Letter").

[2] There is no disagreement that Mr. Lainey was a Turnberry employee when the Letter was drafted and executed, and when the negotiations relating thereto took place. In that regard, Mr. Lainey was operating under an Employment Agreement executed by himself and Turnberry, on or about August 28, 1998. A copy of this Employment Agreement is attached hereto as Exhibit 2. This Employment Agreement was still in effect when Mr. Lainey sought to purchase the Plane from IP. *See* Deposition of Dennis Lainey, November 15, 2000 ("Lainey Dep."), 19:14 to 20:23.

[3] IP's position regarding the scope and intent of the Letter is fully set forth in IP's Motion for Summary Final Judgment, which shall be served by December 22, 2000.

2

3.  All documents, photographs, and videotapes regarding the Plaintiff's attempted purchase of the subject aircraft from Defendant.

20.  All documents reflecting *notes* taken *by an employee or agent of Plaintiff* during any telephone conversation(s) or meeting(s) or inspection(s) relating to the aircraft as issue in the Complaint.

21.  All documents, including diaries, calendars, *notes*, schedules and chronologies, created or maintained *by any employee or agent of Plaintiff* which records or relates to Plaintiff's allegations in the Complaint.

22.  A complete copy of all journals, diaries, daily log books, appointment books, calendars, memoirs, daybooks, ledgers, logs, notebooks, note pads, and/or engagement books written in or maintained *by any employee or agent of Plaintiff* relating to the aircraft at issue in the Complaint." *See* Ex. 3 (emphases added).

In response to the Request for Production, Turnberry produced almost 400 pages of documents; however, at no time was IP apprised that Mr. Lainey possessed a folder of handwritten notes relating to the aircraft, produced while negotiations between the parties were occurring, and no such handwritten notes were ever produced.[4]

As Mr. Lainey is unquestionably the most knowledgeable Turnberry employee concerning the subject dispute, IP's counsel tried to serve him with a subpoena for deposition. Service, however, was never effectuated.[5]

Following several failed attempts at arranging for Mr. Lainey's deposition, Turnberry's counsel finally agreed that he would produce Mr. Lainey. To that end,

---

[4] It is undisputed that Mr. Lainey was a Turnberry employee when the Request for Production was served. *See* Lainey Dep., 12:17 to 13:14 (testifying that he has been employed by Turnberry since June 15, 2000).

on October 16, 2000, the undersigned faxed and mailed a letter to Turnberry's counsel, attaching (and enclosing) both a Notice of Deposition and a Subpoena Duces Tecum ("Subpoena").[6]

The Subpoena compelled Mr. Lainey to produce at his deposition:

> Copies of any and all documents, including, but not limited to, correspondence, reports, ___notes___, phone messages, diaries, phone records, drafts, contracts, ___memos___, expense reports and agreements *regarding the negotiation, attempted purchase and inspection of the aircraft from International Paper Company and/or Emerald Aviation*; documents regarding the inspection, improvements, repairs and purchase of the aircraft from AeroToy Store; and documents regarding your scope of employment/consulting agreement for Turnberry, and compensation for same. *See* Subpoena, Comp. Ex. 4 (emphases supplied).

Notwithstanding that the Subpoena was served almost a month before the scheduled deposition, and that Turnberry was put on notice ***almost three months prior*** in the Request for Production that IP sought handwritten notes and memos from Turnberry's employees, Turnberry and its counsel permitted Mr. Lainey to ***completely destroy ___all___*** of his notes and memos ***one week prior*** to his deposition. *See* Lainey Dep., 78:9 to 79:10; 89:10-15; 108:21 to 109:3; 136:15 to 137:15.[7]

---

[5] In this regard, Mr. Lainey testified that although he was aware that someone was trying to serve him with a subpoena, he did not make himself available to pick it up because he "was busy." *See* Lainey Dep., 13:23 to 14:20.

[6] Copies of the letter, the Notice of Deposition, and the Subpoena Duces Tecum are attached hereto as Composite Exhibit 4.

[7] Moreover, when undersigned counsel attempted to ascertain when Mr. Lainey received notice of IP's request for these documents, Turnberry's counsel improperly invoked the attorney-client privilege to prevent Mr. Lainey from testifying to the underlying *facts*. *See* Lainey Dep., 89:16 to 93:23.

4

Such blatant disregard for the rules of discovery, and the integrity of the

entire judicial system and this Court, warrants a striking of Turnberry's complaint.

## *LEGAL ARGUMENT*

### POINT I

### TURNBERRY'S MISCONDUCT IN PERMITTING LAINEY TO ELIMINATE CRUCIAL EVIDENCE AFTER IT WAS REQUESTED WARRANTS A STRIKING OF ITS COMPLAINT

At the moment of service of the Request for Production, and again at service

of the Subpoena, Turnberry was under a duty to preserve Mr. Lainey's handwritten

notes. In that regard, the court in *Wm. T. Thompson Co. v. General Nutrition Corp.*

articulately stated that:

> Sanctions may be imposed against a litigant who is on
> notice that documents and information in its possession
> are relevant to litigation . . . and destroys such documents
> and information. While a litigant is under *no* duty *to*
> keep or retain *every* document *in* its possession once a
> complaint is filed, **it is under a duty to preserve what**
> it knows, or reasonably should know, is relevant in the
> action . . . and/or **is the subject of a pending discovery**
> **request**.

593 F. Supp. 1433, 1455 (C.D. Cal. 1984) (citations omitted) (emphasis added); *see*

*also Figgie Int'l, Inc. v. Alderman*, 698 So. 2d 563, 567 (Fla. 3d DCA), *reh'g denied*,

(Sept. 17, 1997) (holding that the defendant had a duty to preserve evidence within

the scope of defendant's discovery request, and quoting that "document-production

requests put the parties on notice that documents should be preserved . . ." (citation

omitted)).

5

Unquestionably, this Court possesses the authority to strike Turnberry's complaint for its willful and flagrant destruction of the documents specifically requested by IP on two separate occasion. *See Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 126-27 (S.D. Fla. 1987); *see also Banco Latino, S.A.C.A. v. Lopez*, 53 F. Supp.2d 1273, 1277 (S.D. Fla. 1999); *Carlucci v. Piper Aircraft Corp.*, 102 F.R.D. 472, 485-86 (S.D. Fla. 1984) (ordering default judgment against defendants where documents were destroyed after litigation commenced and with the intention that they not be produced in litigation).

This tremendous power, derives not only from Rule 37 of the Federal Rules of Civil Procedure, but from "the inherent power to regulate litigation and to sanction litigants for abusive practices." *Telectron*, 116 F.R.D. at 126, 128; *see also Banco Latino*, 53 F. Supp.2d at 1277 (acknowledging that a court's sanctioning powers extend beyond the Rules of Civil Procedure); *EEOC v. Jacksonville Shipyards, Inc.*, 690 F. Supp. 995, 997 (M.D. Fla. 1988) (recognizing a district court's inherent authority to sanction for document destruction).

As demonstrated below, a consideration of the pertinent factors previously enumerated by this Court, inescapably leads to the conclusion that striking the complaint is the only means of remedying: (a) Turnberry's flagrant disregard for the rules of discovery; and (b) the insurmountable prejudice cast upon IP.

## A. Turnberry's Destruction Was Willful

Before the Court can strike Turnberry's complaint, it must find willful conduct, namely bad faith. *See Telectron*, 116 F.R.D. at 131 (finding willful conduct,

6

where, *inter alia*, the documents were destroyed following service of the complaint with accompanying request for production); *see also Banco Latino*, 53 F. Supp.2d at 1277 n.3 (confirming that the Eleventh Circuit requires a bad faith showing).

It has been acknowledged that failing to preserve documents after receiving a notice relating to them is "willful." *See Jacksonville Shipyards*, 690 F. Supp. at 998. In this case, certainly, Turnberry's (and Mr. Lainey's) conduct was willful. There is no dispute that Turnberry received the Request for Production on or about July 20, 2000, wherein IP requested notes and memos from its employees. *See* Ex. 3. Additionally, Turnberry cannot counter that its counsel received the Notice of Deposition and Subpoena around October 16, 2000, compelling Mr. Lainey to produce any notes or memos in his possession. *See* Comp. Ex. 4.

At both instances, Turnberry became obligated to preserve any such evidence in its possession. *See Wm. T. Thompson*, 593 F. Supp. at 1455; *see also Figgie Int'l*, 698 So. 2d at 567). However, despite these two requests and their accompanying duty, Mr. Lainey testified that he destroyed the requested documents **one week** before his deposition. *See* Lainey Dep., 78:16 to 79:10; 89:10-15; 108:21 to 109:3; 136:14 to 137:15 (testifying that he threw a folder of handwritten documents away about a week before his deposition).

Moreover, Turnberry's bad faith is further evidenced by the fact that Turnberry's counsel prohibited Mr. Lainey from testifying about when Mr. Lainey

first received notice of his being deposed. *See* Lainey Dep., 89:10 to 93:23. This was

accomplished by the improper invocation of the attorney-client privilege.[8] *See id.*

## B.    IP is Wrongfully Prejudiced by the Destruction

Like bad faith, this Court must find that Turnberry's misconduct works a

prejudice upon IP, as the party seeking the discovery. *See Telectron*, 116 F.R.D. at

131 (finding that the defendant's destruction of the documents prejudiced the

plaintiff's ability to adjudicate its claims).

Here, Turnberry's destruction prevents IP from full and fairly adjudicating

the case. "A fair trial requires that both parties be heard and that both parties be

permitted wherever possible to marshal and present evidence relevant to their

positions in the litigation." *See Northern Assurance Co. v. Ware*, 145 F.R.D. 281,

284 (D. Me. 1993). As mentioned above, Turnberry alleges that a contract was

reached with IP for the sale of the Plane. The two key players possessing personal

knowledge about what actually happened during negotiations for the Plane, and

what was the intent in executing the Letter, are Mr. Lainey, and IP's broker,

Edward Dahlberg ("Mr. Dahlberg").

Mr. Dahlberg maintains that no final agreement was ever reached regarding

the Plane, and that further negotiations were contemplated. The language used in

Turnberry's    Letter    certainly    and    unequivocally    substantiates    such    an

---

[8] Such use of the sacred attorney-client privilege was undoubtedly wrongful, as the undersigned only sought *factual* information from Mr. Lainey. *See In re Alexander Grant & Co. Litigation*, 110 F.R.D. 545 (S.D. Fla. 1986) (recognizing that the attorney-client privilege does not attach to underlying facts).

understanding.[9]   Despite the non-committal language employed in the Letter written by Mr. Lainey, Turnberry avers that Mr. Lainey and Mr. Dahlberg intended the Letter to be binding.

It is quite paradoxical that, on the one hand, Mr. Lainey drafted a document, under which, either party was free to walk away, and, on the other hand, he recalls that both he and Mr. Dahlberg knew conclusively that a deal was reached.

Because of the contradictory set of circumstances, IP ardently believes that Mr. Lainey's handwritten records would unambiguously confirm that both Mr. Lainey and Mr. Dahlberg agreed that no final deal was struck; or at least disclose that there needed to be continuing negotiations.[10]   Why else would he have destroyed them, considering he had already kept them for over a year and a half? Without these handwritten notes, which were created while the events were

---

[9] *For example, the letter provides that "subject to the good faith efforts of both parties to* negotiate **mutually agreeable** terms and conditions of the sale **and** the timely execution and delivery of a *definitive sales agreement* in form **and** substance **mutually acceptable** to the parties," Turnberry would pay seven million dollars for the Plane. (Emphases supplied). *See* Ex. 1. (Emphasis supplied).   Additionally, the Letter designates the "good faith" deposit as "fully refundable until such time **as a definitive sales agreement** shall be executed, and then shall become subject to the terms and conditions of **that agreement**." *Id.* (Emphases added). Similarly, the Letter prescribes that even if the "offer" was accepted by IP, it would still become "null and void" at 5:00 p.m., June 28, 1999, "if the parties have not **agreed to and executed a definitive sales agreement** prior to that time." *Id.* (Emphasis added).

[10] Instead of producing his handwritten notes, at deposition, Mr. Lainey produced a self-serving six-page "chronology" of the purported events leading up to this case. *See* Lainey Dep., 35:25 to 36:5; 44:2-15. Mr. Lainey attempted to support the destruction of his handwritten notes by maintaining that the "chronology" was based upon his hand-written notes. *See* Lainey Dep., 78:14 to 79:10. However, this proffered excuse fails to relieve Turnberry of its duty not to destroy relevant and requested evidence--once the notes were requested by IP, Turnberry had to preserve them. *See Figgie Int'l,* 698 So. 2d at 567. Moreover, the chronology certainly does not cure the prejudice suffered by IP, as: (a) they are not a complete reproduction of Mr. Lainey's handwritten notes (*see* Lainey Dep., 61:7-13 (testifying that the chronology is "not all the events, these are just highlight events of the notes that I had.")); (b) the chronology is nothing more than a script of his deposition testimony; and (c) Mr. Lainey destroyed the notes while Turnberry was under an obligation to produce them to IP, pursuant to both the Request for Production and the Subpoena. *See* Exs. 2 & 4.

ongoing, and not over a year later in the middle of contentious litigation, IP is deprived of an opportunity to fairly and fully present its defense in this case.

## C.    Sanctions Lesser Than Striking Turnberry's Complaint Are Inadequate

Finally, any lesser sanction will not serve the dual goals of punishment and deterrence. *See Telectron*, 116 F.R.D. at 131, 134-36 (finding that alternative sanctions, such as, (a) an award of attorneys' fees and costs; (b) evidence of the destructive conduct; and (c) allowing the destruction issue to be explored at trial, would not: (i) punish the willful destruction; (ii) compensate the plaintiff for the "irretrievable loss of evidence potentially crucial to its [ ] claims;" and (iii) would not serve as a future deterrent because the costs of destroying documents could outweigh the detriment of exposing this to the jury).

Here, lesser, alternative sanctions would not achieve the purpose of "insur[ing] the integrity of the discovery process."[11] There is no overlooking that Turnberry turned a blind eye to the rules of discovery when it permitted the destruction of requested and highly relevant documents.

As a result, no sanction, less than a dismissal of its complaint, will: (a) remedy the fact that IP has been permanently deprived of "evidence potentially crucial" to its defense; (b) removing the potential benefit to be gained by Turnberry; namely, precluding IP from defending itself; (c) deter Turnberry from engaging in

---

[11] *See Telectron*, 116 F.R.D. at 136.

similar actions in the future; and (d) deter others who may be considering taking

such unfair and damaging actions.

Accordingly, Turnberry's complaint should be stricken.

## POINT II

## LAINEY'S WILLFUL DESTRUCTION OF THE DOCUMENTS AFTER TURNBERRY WAS PUT ON NOTICE OF THEIR NECESSITY JUSTIFIES A JURY INSTRUCTION REGARDING SPOLIATION OF EVIDENCE

Should the Court decide not to strike Turnberry's complaint for its egregious

behavior, IP should, at least, be entitled to a jury instruction "explaining that [the]

destroyed documents are presumed to be damaging to the party responsible for the

destruction." *ABC Home Health Servs., Inc. v. IBM Corp.*, 158 F.R.D. 180, 183 (S.D.

Ga. 1994); *see also New Hampshire Ins. Co. v. Royal Ins. Co.*, 559 So. 2d 102, 102

(Fla. 4th DCA 1990) (remarking that the court could grant an adverse inference

where documents were not produced).

The Southern District of Florida has previously accepted, what has been

coined, the "adverse inference rule." Specifically, this "rule" recognizes that "the

bad-faith destruction of a relevant document, by itself, 'gives rise to a strong

inference that production would have been unfavorable to the party responsible for

its destruction." *Telectron*, 116 F.R.D. at 133 (citations omitted) (holding that

destruction of documents after their request warranted an inference that they

would have been harmful to the destroying party).

It has been further established that "[w]hen a party is once found to be

fabricating or *suppressing documents*, the natural, indeed, *the inevitable*

11

*conclusion* is that he has something to conceal, and is conscious of guilt." *Warner Barnes & Co. v. Kokasai Kisen Kabushiki Kaisha*, 102 F.2d 450, 453 (2d Cir.), *as modified*, 103 F.2d 430 (2d Cir. 1939) (emphases added). Such conclusion could not ring more true in this case, where the documents were undoubtedly destroyed in bad faith.

### *CONCLUSION*

Turnberry's bad faith destruction (post litigation commencement) of previously requested, material documents is a blatant disregard for the established rules of discovery. This Court, pursuant to these same rules, and its inherent sanctioning power, should punish and deter such egregious behavior and blatant disregard by striking Turnberry's complaint.

Alternatively, Turnberry's willful misconduct indicates that this Court should indulge an adverse inference against Turnberry by instructing the jury that it may infer that the destruction of the documents occurred because they contained data harmful to Turnberry's positions.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for International Paper
One East Broward Boulevard, 13th Floor
Fort Lauderdale, FL 33301-4070
Tel: (954) 525-1000
Fax:(954) 463-2030
Email: pminoff@hklaw.com

By:_____
    Paul H. Minoff, for the Firm
    Florida Bar No. 0182079

12

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this _____ day of December, 2000, a true and correct copy of the foregoing has been furnished via facsimile and U.S. Mail to: David H. Reimer, Attorney for Plaintiff, Reimer & Rosenthal, LLP, 3801 Hollywood Blvd., Suite #350, Hollywood, Florida 33021.

HOLLAND & KNIGHT LLP

By:_____
    Paul H. Minoff
    Florida Bar No. 0182079

FTL1 #520816 v2

13

# *Turnberry Charters Inc.*

Aviation Department

SENT VIA FAX TO (703) 361-3170
EMERALD AVIATION, Agent

June 19, 1999

INTERNATIONAL PAPER COMPANY
DBA UNION CAMP CORP.
184 Airport Rd., Hgr. D
White Plains, NY 10604

Re:    1981 Canadair Challenger CL600  S/N 1023  N90UC

This will confirm our telephone conversation with your agent, Mr. Ed Dahlberg, on June 18, 1999. TURNBERRY CHARTERS, INC. hereby offers $7,000,000.00 U.S. for the above referenced aircraft, subject to the good faith efforts of both parties to negotiate mutually agreeable terms and conditions of the sale, and the timely execution and delivery of a definitive sales agreement in form and substance mutually acceptable to the parties.

It is our understanding that timeliness is a determining factor in the sale of the aircraft, and it is our intention and desire to close within ten (10) business days. We have just sold our Gulfstream GIIB, and are in immediate need of a replacement aircraft. We have pre-arranged funding in place with GECC, and their Manager of Aircraft Leasing and Financing, Mr. Michael C. Flint, can be contacted at (770) 999-4921 to confirm our ability to close upon our demand.

To confirm our sincere interest in purchasing your aircraft, we have placed a good faith deposit of $100,000.00 in escrow with AIC Title Service, and you have received or will soon receive faxed confirmation of this from the Escrow Agent. This deposit shall, of course, be fully refundable until such time as a definitive sales agreement shall be executed, and then shall become subject to the terms and conditions of that agreement.

It is our understanding that the records of the recent prepurchase inspection on the aircraft, and the recent landing gear overhaul and the 120 month and 36-month inspections will be made available to us for review at Midcoast Aviation in St. Louis, MO, and it is our intention to send our agent, Mr. Ken Murray, to Midcoast to review these records immediately upon acceptance of this offer. It will also be our intention to visually inspect the aircraft and to conduct systems checks at our expense at Midcoast Aviation, as well as a flight check (not to exceed two (2) hours flight time) to confirm that all systems are operating normally.

15991 N.W. 42nd Avenue, Suite 117, Miami, FL 33054  (305) 456-0681  Fax (305) 158-6847



DEFENDANT'S
EXHIBIT

*1*

INTERNATIONAL PAPER COMPANY                    2                        June 19, 1999

.... ..... .. ... .... ........ .. .. .... ... .. ...... as of 5:00 pm EDT, Monday, June 21, 1999, unless accepted by execution below and returned prior to that time. This offer, if accepted and executed, shall become null and void as of 5:00 pm EDT, Monday, June 28, 1999. If the parties have not agreed to and executed a definitive sales agreement prior to that time.

This offer is intended for the owner and the owner's agent only, and the terms hereof are not to be divulged to any third party.

For TURNBERRY CHARTERS, INC.          For INTERNATIONAL PAPER COMPANY

_[signature]_                         _[signature]_  6/21/99
                                      Sr. VP

## EMPLOYMENT AGREEMENT

THIS AGREEMENT is made this 25th day of August, 1998, by and between TURNBERRY CHARTERS, INC., a Florida corporation whose principal office is located at 19501 Biscayne Blvd., Suite #400, Aventura, FL 33180, (and/or any other Turnberry corporation or identity affiliated with the Turnberry corporations or their principals), hereinafter referred to as the "EMPLOYER", and DENNIS R. LAINEY, an individual whose address is 5800 Overseas Hwy., #35-152, Marathon, FL 33050, hereinafter referred to as the "EMPLOYEE".

INASMUCH AS the EMPLOYER is presently the owner of two aircraft, one Gulfstream GIIB aircraft serial number 073, and Cessna Citation SII aircraft serial number S550-0154, and desires to sell these two aircraft and purchase other aircraft to replace these, and desires to employ the EMPLOYEE to perform these specific services of selling and purchasing these aircraft, as well as any other aircraft the EMPLOYER may designate in the future, on behalf of the EMPLOYER; and inasmuch as the EMPLOYEE desires to perform these specific services for the EMPLOYER,

It is therefore agreed by both parties as follows:

1. The EMPLOYEE will act on behalf of and at the sole direction of the EMPLOYER, as EMPLOYER's Director of Sales, and will present all terms and conditions of the potential sale or purchase of an aircraft to the EMPLOYER for consideration. The EMPLOYEE will work under the EMPLOYER's sole direction to handle the details and facilitate the closing of the sale or purchase of the aircraft, and the EMPLOYER shall bear sole responsibility for the acceptance of the terms and conditions of the sale or purchase and the completion of the transaction.

2. The EMPLOYER will bear sole responsibility for and will pay all the costs and expenses of the marketing and sale of aircraft, and for the market search and purchase of aircraft, including payment of the purchase price plus all applicable taxes and fees. It will be the EMPLOYER's own responsibility to determine if any taxes or fees are applicable to its sale or purchase of an aircraft, including sales and use taxes, and the EMPLOYER will bear sole responsibility for any such liabilities.

3. The EMPLOYER will pay the EMPLOYEE a commission equal to two percent (2%) of the first $7,500,000.00 of the total sale price or purchase price of each applicable transaction, including full trade value in the event of a trade transaction. The sum owed for each transaction will be due and payable in full on closing date of that transaction.

This Employment Agreement shall be in effect from this date until the completion of the sale of the two aircraft and the purchase of the replacement aircraft, as well as any other aircraft the EMPLOYER may designate in the future, or until terminated by either party by written notice to the other party.

Both parties acknowledge that this Employment Agreement has been fully read and understood, and that this is the full and complete agreement between the parties, and that it shall not be modified except in writing and signed by both parties.

TURNBERRY CHARTERS, INC.
(EMPLOYER)
by: Jeffrey M. Soffer

DENNIS R. LAINEY
(EMPLOYEE)

DEFENDANT'S
EXHIBIT
2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6111-CIV-(DIMITROULEAS/Johnson)

TURNBERRY CHARTERS, INC.

    Plaintiff,

vs.

INTERNATIONAL PAPER COMPANY

    Defendant.

_____/

## DEFENDANT'S REQUEST FOR PRODUCTION

**PLEASE TAKE NOTICE THAT** pursuant to Federal Rules of Civil Procedure 26 and 34 and Southern District of Florida Local Rule 26.1, Defendant International Paper Company serves upon Plaintiff Turnberry Charters, Inc. its First Request for Production of Documents, and requests that Plaintiff produce for inspection and copying, or forward copies to counsel, at the following address: Holland & Knight LLP, One East Broward Boulevard, Suite 1300, Fort Lauderdale, Florida 33301, or at a place agreed upon by counsel, within thirty (30) days of service hereof, each document responsive to the following requests.

## DEFINITIONS AND INSTRUCTIONS

1. When answering these Requests, please furnish all documents known to or in the possession of Plaintiff or his agents, representatives, or attorneys. If any Request asks for a document no longer in such custody, possession or control, please identify the document and indicate when and how it was disposed of, and identify each person, if any, who now possesses or controls such documents.

2. If, after exercising due diligence to secure the documents requested, a Request cannot be satisfied in full, please so state and respond to the extent possible, specifying the basis for the inability to satisfy the remainder of the

DEFENDANT'S
EXHIBIT
3

Request, producing whatever information, knowledge or documents Plaintiff has concerning the unanswered portion.

3.     If a claim of privilege is asserted concerning any document sought, please:

(a)     identify such document with sufficient particularity to allow the matter to be brought before the Court;

(b)     state the nature of the privilege asserted; and

(c)     state the factual basis for the privilege claim.

4.     Pursuant to the Federal Rules of Civil Procedure, these requests are deemed to be continuing.   At such time as you receive documents that make a prior Response incomplete, inaccurate or misleading, a supplementary Response is required.

5.     The terms "related to" or "relating to" mean: consist of, refer to, reflect or be in any way logically or factually connected with the matter discussed, directly or indirectly.

6.     The terms "you," and "your" and "Plaintiff" refer to Plaintiff Turnberry Charters, Inc. or any person acting at your direction or on your behalf.

7.     The word "document" as used in these Requests for Production means the original and any nonidentical copy, regardless of origin or location, of any writing or record of any type or description in the possession, custody or control of the Plaintiff or of any other person or persons, representatives, agents or attorneys acting on behalf of the Plaintiff, whether relating to fact, opinion, event, recollection or intention, whether draft or final, original or reproduction, including but not limited to the original and any nonidentical copy of the following items, whether printed or recorded or reproduced by any other mechanical process, or written or produced by hand:        affidavits, agreements, communications, correspondence, telegrams, memoranda, letters, interoffice or intra-office communications, e-mails, statements, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, summaries or records, studies, surveys, notebooks, charts, graphs, certificates, licenses, drawings, drafts, working papers, applications, resumes, pamphlets, books, periodicals, photographs, tapes, discs, data sheets or data processing cards, or any other written, recorded, transcribed, filmed, or graphic matter.   All documents responsive to each request should be produced.

8.     The term "communications" means all inquiries, discussions, conversations, e-mails,    negotiations,    agreements,    understandings,    meetings,    telephone conversations, letters, notes, telegrams, and all other forms of written exchange.

9.    Documents should be labeled to indicate the specific Requests for Production to which the documents respond.

## DOCUMENTS TO BE PRODUCED

1.    All documents relating to the allegations contained in the Plaintiff's Complaint.

2.    All document retention policies for Plaintiffs from 1998 through the present.

3.    All documents relating to any damages Plaintiff claims in this action which you allege are chargeable to Defendant.

4.    All documents, photographs, and videotapes regarding the Plaintiff's attempted purchase of the subject aircraft from Defendant.

5.    All documents, photographs, and videotapes regarding the Plaintiff's purchase of the subject aircraft from Aero Toy Store, Inc.

6.    All written communications or documents exchanged between Plaintiff and Defendant regarding the subject aircraft in the Complaint.

7.    All written communications or documents exchanged between Plaintiff and any other entity or individual regarding the subject aircraft in the Complaint.

8.    All written communications or documents exchanged between Plaintiff and Aero Toy Store, Inc. regarding the subject aircraft in the Complaint.

9.    All photographs and videos depicting the subject aircraft, including, but not limited to, any and all photographs or videos taken prior to Plaintiff's purchase and after Plaintiff's purchase.

10.     All documents which relate to any changes, improvements or repairs made to the subject aircraft after January 1999.

11.     All documents which relate to Plaintiff's purchase(s) or sale(s) of any other aircraft from 1995 to the present.

12.     All documents, reports or other evidence of inspections regarding the aircraft at issue in the Complaint.

13.     All documents which relate to the current ownership and title of the subject aircraft in the Complaint.

14.     All documents, if any, which relate to the Plaintiff's sale or transfer of ownership of the subject aircraft in the Complaint.

15.     All documents in Plaintiff's possession from Aero Toy Store, Inc. regarding the subject aircraft identified in the Complaint.

16.     All documents in Plaintiff's possession from Defendant regarding the subject aircraft identified in the Complaint.

17.     All documents in Plaintiff's possession from Midcoast or Steve Bates regarding the subject aircraft identified in the Complaint.

18.     All documents in Plaintiff's possession from Emerald Aviation or Ed Dalbert regarding the subject aircraft identified in the Complaint.

19.     All documents Plaintiff has received from any insurance carrier or insurance agent relating to insured value of the aircraft at issue in the Complaint.

20. All documents reflecting notes taken by any employee or agent of Plaintiff during any telephone conversation(s) or meeting(s) or inspection(s) relating to the aircraft at issue in the Complaint.

21. All documents, including diaries, calendars, notes, schedules and chronologies, created or maintained by any employee or agent of Plaintiff which records or relates to Plaintiff's allegations in the Complaint.

22. A complete copy of all journals, diaries, daily log books, appointment books, calendars, memoirs, daybooks, ledgers, logs, notebooks, note pads, and/or engagement books written in or maintained by any employee or agent of Plaintiff relating to the aircraft at issue in the Complaint.

23. All documents prepared by or for any expert contacted by Plaintiff which record or relates the facts and opinions upon which the expert is expected to testify.

24. All documents provided by Plaintiff to any expert, or received by Plaintiff from any expert, contacted regarding this matter.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Defendant
One East Broward Blvd., Suite #1300
Ft. Lauderdale, FL 33301
Telephone (954) 525-1000
Fax (954) 463-2030

By: _____
Richard C. Hutchison
Florida Bar No. 709360
Email – rhutchison@hklaw.com

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served by fax and US Mail to Plaintiff's counsel David H. Reimer at Reimer &

Rosenthal, LLP, 3801 Hollywood Blvd., Suite #350, Hollywood, FL 33021 on this

_20_ <sup>th</sup> day of July, 2000.

By: Richard C. Hutchison
Florida Bar No. 709360

FTL1 #499853 v1

One East Broward Boulevard. Suite 1300
P.O. Box 14070 (ZIP 33302-4070)
Fort Lauderdale, Florida 33301

954-525-1000
FAX 954-463-2030
www.hklaw.com

Atlanta
Boston          Northern Virginia
                Orlando
Bradenton       Providence
Chicago         St. Petersburg
Fort Lauderdale San Antonio
Jacksonville    San Francisco
Lakeland        Seattle
Los Angeles     Tallahassee
Melbourne       Tampa
Miami           Washington, D.C.
New York        West Palm Beach

International Offices
Buenos Aires*    Tel Aviv*
Mexico City      Tokyo
* Representative Offices

October 16, 2000

## VIA FACSIMILE & U.S. MAIL

David H. Reimer
Reimer & Rosenthal, LLP
3801 Hollywood Blvd., Suite #350
Hollywood, FL 33021

> Re:  Turnberry Charters, Inc. v. International Paper Company
> U.S.D.C., Southern District of Florida

Dear David:

I have not yet received a notice of deposition for Mr. Cassidy's deposition,
scheduled for Friday, November 3, 2000, or for Aero Toy (and Jet Center), which
is tentatively scheduled for October 24, 2000.

Additionally, attached please find a notice of deposition for Mr. Lainey
and a subpoena duces tecum regarding same. I will not be attempting to serve
Mr. Lainey since you represented during Mr. Aitkens' deposition that Mr.
Lainey is now "an employee" of the plaintiff, and that you will be providing him
for deposition without subpoena. I set the deposition for Wednesday, November
15, 2000. In the event that day is not convenient, I am also available Tuesday,
November 14, 2000. However, if I do not hear from you by Wednesday, October
18, 2000, I will assume Mr. Lainey's deposition will go forward as noticed.



DEFENDANT'S
EXHIBIT
4

Lastly, Mr. Dahlberg has not yet responded with convenient dates.  I hope
to have a definite date soon.

If you have any questions, please do not hesitate to call.

Very truly yours,

HOLLAND & KNIGHT LLP

Richard C. Hutchison
Signed in his absence to avoid delay

RCH:rb

cc:  Heather C. Keith, Esq.

FTL1 #512790 v1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6111-CIV-(DIMITROULEAS/Johnson)

TURNBERRY CHARTERS, INC.

    Plaintiff,

vs.

INTERNATIONAL PAPER COMPANY

    Defendant.

_____/

## NOTICE OF TAKING DEPOSITION (*DUCES TECUM*)

TO:   David H. Reimer
      Reimer & Rosenthal, LLP
      3801 Hollywood Blvd., Suite #350
      Hollywood, FL 33021

      PLEASE TAKE NOTICE that Defendant will take the deposition of the

following person on the date, time and at the location specified.

**Name:**

**Location/Date/Time:**

**Dennis Lainey**

**Reimer & Rosenthal, LLP**
**3801 Hollywood Blvd., Suite #350**
**Hollywood, FL 33021**

**November 15, 2000 at 9:00 a.m.**

upon oral examination, before Interim Court Reporting, or any other officer duly

authorized to administer oaths by the laws of the State of Florida. The deposition

will continue from hour to hour and from day to day until completed. The

deposition is being taken for the purpose of discovery, and for use at trial, or both of

the foregoing, or for such other purposes as are permitted under the applicable and

governing rules.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for International Paper
One East Broward Blvd., Suite #1300
Ft. Lauderdale, FL 33301
Telephone (954) 525-1000
Fax (954) 463-2030

By: _____

Richard C. Hutchison
Florida Bar No. 709360

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via U.S. Mail to Plaintiff's counsel David H. Reimer at Reimer & Rosenthal, LLP, 3801 Hollywood Blvd., Suite #350, Hollywood, FL 33021 on this _16_ day of October, 2000.

By: _____

Richard C. Hutchison
Florida Bar No. 709360

cc:    Interim Court Reporting

FTL1 #512796 v1

# United States District Court

SOUTHERN DISTRICT OF FLORIDA

Turnberry Charters, Inc.,

Plaintiff

V.

International Paper Company,

Defendants

SUBPOENA FOR DEPOSITION IN A CIVIL CASE
DUCES TECUM

Case No. 00-6111-CIV-(DIMITROULEAS/Johnson)

TO:    Dennis R. Lainey
       Turnberry Charters
       15001 NW 42nd Avenue, Suite 117
       Miami, Florida 33054

YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY: | COURTROOM |
|---|---|
|  | DATE AND TIME: |

**X**    YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Reimer & Rosenthal, LLP** | **November 15, 2000** |
| **3801 Hollywood Blvd., Suite 350** | **9:00 a.m.** |
| **Hollywood, FL 33021** |  |

YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **Copies of any and all documents, including, but not limited to, correspondence, reports, notes, phone messages, diaries, phone records, drafts, contracts, memos, expense reports and agreements regarding the negotiation, attempted purchase and inspection of the aircraft from International Paper Company and/or Emerald Aviation; documents regarding the inspection, improvements, repairs and purchase of the aircraft from AeroToy Store; and documents regarding your scope of employment/consulting agreement for Turnberry, and compensation for same.**

| PLACE | DATE AND TIME |
|---|---|
| Reimer & Rosenthal, LLP | **November 15, 2000** |
| 3801 Hollywood Blvd., Suite 350 | **9:00 a.m.** |
| Hollywood, FL 33021 |  |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suite that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE October 11, 2000 |
|---|---|
| _____, Richard C. Hutchison, Attorney for Defendants |  |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER Richard C. Hutchison, Esq., Holland & Knight LLP, Attorney for Defendants, One East Broward Boulevard, Suite 1300, Fort Lauderdale, Florida 33301; (954) 525-1000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D)

1

| | DATE | PLACE |
|---|---|---|
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

| DECLARATION OF SERVER |
|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE                                          SIGNATURE OF SERVER


ADDRESS OF SERVER


Rule 45, Federal Rules of Civil Procedure, Parts C&D

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it:

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected        material and no exception or waiver applies, or

(iv)    subjects a person to undue burden

(B)    If a subpoena:

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.