UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO: ~~99-1498-CIV-ORL-22~~ OOCV 6111 WPD

TURNBERRY CHARTERS, INC.

Plaintiff,

v.

INTERNATIONAL PAPER COMPANY

Defendant.

_____/

**NIGHT BOX FILED**
**JAN 2 5 2001**
CLAREN S MADDOX
CLK, USDC / SDFL / FTL

### PLAINTIFF, TURNBERRY CHARTERS, INC.'S
### RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### OR ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT LIMITING DAMAGES

Plaintiff, TURNBERRY CHARTERS, INC., by and through their undersigned counsel, hereby files this Response to Defendant, INTERNATIONAL PAPER COMPANY'S, Motion for Summary Judgment or in the Alternative Partial Summary Judgment Limiting Damages, and states:

### INTRODUCTION

For the reasons stated herein, Plaintiff asserts that Defendant is not entitled to Summary Judgment on any of the three separate and distinct counts asserted by Plaintiff's Complaint. Plaintiff believes that Defendant misconstrues one of Plaintiff's causes of action, namely Count III. Additionally, Defendant's statement of the facts suggests certain points as being undisputed, yet a complete disclosure of the facts, as disclosed by the depositions in taken in this case, tells a different story.

### STATEMENT OF MATERIAL FACTS

This case does indeed evolve from a letter agreement executed by Plaintiff and Defendant for the purchase and sale of a 1981 Canadair Challenger CL600 aircraft, serial number 1023 (the "Plane"). (Deposition of Dennis Lainey, Nov. 15, 2000 (Exhibit 18)). On



June 20, 1999, after verbally negotiating the terms of a deal for purchase and sale of the Plane, Turnberry Charters, through its agent Dennis Lainey, located in Florida, forwarded an offer for the purchase of the Plane to International Paper's agent Edward Dahlberg, located in Virginia. (Lainey Deposition 42:2-8). Mr. Dahlberg contacted International Paper's Chief Pilot, Robert Cassidy, to inform him that he had received an "offer" to purchase the aircraft. (Deposition of Robert Cassidy, November 3, 2000; 39:14-16). Mr. Dahlberg then forwarded the written offer to Mr. Cassidy, (Deposition of Edward C. Dahlberg, November 30, 2000; 50:4-17) who in turn provided it to International Paper's Executive Vice-President responsible for the sale of the Plane, who was located in New York. (Cassidy Deposition; 36:5-11) International Paper's Vice President then accepted the offer by executing the offer, and returned the acceptance to Turnberry Charters on June 21, 2000. (Lainey Deposition; 42:23-24)

The letter agreement, executed by both parties, includes the price ($7,000,000), the financing arrangements GECC [G.E. Capital Corporation], a closing within 10 business days, and a good faith deposit of $100,000 having already been deposited with an escrow agent.

The letter agreement further contains the following important statement with regard to interpreting the intent of the parties: "It is our intention to send our agent, Ken Murray to Midcoast to review these records [prepurchase inspection report, landing gear overhaul, and the 120 month and 36 month inspections] immediately upon *acceptance of this offer*." (emphasis added).

In a further sentence, the letter agreement states "*This offer*, if accepted and executed, shall become null and void as of 5:00 p.m. EDT Monday June 28, 1999, if the parties have not agreed to and executed a definitive sales agreement prior to that time." (emphasis added).

After the offer was accepted, on June 23, 2000, Turnberry Charters' representative Ken Murray traveled to Cahokia, Illinois, where the Plane was located,[1] in order to begin conducting the inspection of the aircraft identified in the letter agreement. (Deposition of Kenneth Murray, December 11, 2000; 10:2)  Upon arriving at the facility in Cahokia, Midcoast Aviation, Mr. Murray was told by International Paper's agent, Mr. Dahlberg, that he could not inspect the records. (Murray Deposition; 12:19-20). During a 4 or 5 hour delay (Murray Deposition; 13:22), Mr. Dahlberg spoke with Mr. Lainey about the transaction, during which Mr. Lainey confirmed that they were moving forward with the transaction. (Dahlberg Deposition; 64:20-65:2).[2]

On June 22, 2000, Mr. Dahlberg forwarded to Mr. Lainey a proposed draft of a purchase and sale agreement incorporating the terms of the letter agreement. On June 23, 2000, Mr. Lainey returned some comments to Mr. Dahlberg.  These changes were incorporated into the agreement on Mr. Dahlberg's computer, but from that point on, no further proposals were sent to Mr. Lainey.

On June 24, 2000, Turnberry Charter's agent Dennis Lainey arrived in Cahokia. After spending some time with Mr. Bates and the Plane, Mr. Lainey spoke with Mr. Dahlberg.  At this time, both parties agree what happened:  Mr. Dahlberg told Mr. Lainey that he must immediately stop inspecting the Plane and accept the plane.[3]  When Mr. Lainey stated that he had not completed his inspections he was told the deal was off, and Mr. Dahlberg instructed Mr. Bates not to allow Mr. Lainey any further access to the Plane or its

---

[1]  The plane was normally stationed in New York, but was temporarily located at the repair facility of Midcoast Aviation in Cahokia Illinois.

[2]  Although the parties agree that during this period they agreed that the deal would move forward, each party accuses the other of wanting to call off the deal.  International Paper says that Turnberry Charters wanted repairs to the Plane (notwithstanding the fact that they had not even started their inspection), and Turnberry Charters says that International Paper wanted them to forego the inspection and accept the plane immediately, because another buyer (undisclosed) was ready to purchase the Plane for the same amount without any inspections.

[3]  Mr. Lainey states that the deadline to accept the aircraft was 5:00 p.m. on Thursday June 24th, and Mr. Dahlberg states that it was either June 24th or June 25th.  In either case, the newly created

3

records. These events occurred several days before the June 28th deadline contained in the letter agreement.

Immediately thereafter, probably the following week, International Paper sold the Plane to a plane broker located in Fort Lauderdale, Aero Toy Store. This deal was consummated for the $7,000,000 purchase price Turnberry Charters had previously agreed to. Following, the Plane's sale to Aero Toy Store, Turnberry Charters purchased the Plane from Aero Toy Store for $7,700,000.[4]

International Paper's interpretation of these events is particularly interesting. International Paper's argument is that Turnberry Charter's refused to accept the plane in as is condition, and wanted modifications made. However, when the proposed contract was provided to Turnberry Charters' no changes were made requesting any modifications or warranties.   Moreover, International Paper suggests that when Turnberry Charters purchased the Plane from Aero Toy Store, it requested that changes be made, somehow implying that these changes were the ones that Turnberry wanted International Paper to make.   Yet, Edward Dahlberg says that Dennis Lainey never requested any specific changes, and when purchasing the Plane from Aero Toy Store, Turnberry Charters incurred charges in excess of $186,000 to repair discrepancies or problems found in its inspection of the Plane. This cost was in addition to the $700,000 more for the Plane that Turnberry Charters paid to Aero Toy Store.

In addition, Turnberry Charters would point out that despite their contention that the letter agreement that forms the basis of this case was incomplete, the ultimate agreement upon which they traveled was a one page agreement from Aero Toy Store which contained the amount ($7,000,000) and the date of closing. (Dahlberg Deposition, 95:19-96:23).

---

deadline was several days before the stated deadline of June 28th contained in the executed letter agreement.

**ARGUMENT**

**I.**

**CHOICE OF SUBSTANTIVE LAW**

Defendant's Memorandum of Law makes the conclusory statement that Florida substantive law applies in this case. However, this statement may not be accurate. A Federal District Court ruling in a diversity action must determine which jurisdiction's substantive law to apply. In making such determinations, the Court must follow the choice of law rules of the forum state. *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3rd 1110, 1115 (11th Cir. 1996)

Florida applies the doctrine of *lex loci contractus*, the place where the contract was made or to be formed. *Goodman v. Olsen*, 305 So.2d 753 (Fla. 1974). In this case, the offer was accepted in New York. The Plane was normally located in New York[5]. The Plaintiff, seller was selling the plane in New York, and the letter agreement was silent as to the location of delivery. For these reasons, the agreement upon which Plaintiff relies has more connection with the State of New York than it does with Florida.

**II.**

**SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THERE REMAINS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE PARTIES INTENDED THAT THE LETTER AGREEMENT BE A BINDING AGREEMENT**

The principal question for the Court on Defendant's Motion is whether the parties intended that they be bound by the letter agreement. Although Defendant asserts that the best evidence of the parties' intent is found in the Agreement itself, Plaintiff's assert that the letter agreement evidences an intent to be bound. In fact, the only testimony found in the deposition transcripts on this issue is that of Dennis Lainey, Turnberry Charter's agent, who

---

[4]   In his deposition, Robert Cassidy, International Paper's Chief Pilot stated that he felt the market price for the aircraft was at least $500,000 more than the $7,000,000 sale price. Cassidy Deposition; 60:5-7).

stated that in preparing and signing the letter agreement he intended that Turnberry Charters be bound by its terms.

Defendant's argument that summary judgment should be granted is premised on the fact that the parties intended that the letter agreement be followed by another written agreement. However, as the parties' intent is a question of fact, this fact alone does not support entry of summary judgment.

The Second Circuit Court of Appeal, ruling in a New York case stated that "[t]he mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event." *V'Soske v. Barwick*, 404 F.2d 495 (2nd Cir. 1968)(citing *inter alia Restatement (Second) of Contracts* §26 (then Tent. Draft No. 1, 1964), *1 Corbin on Contracts* §30 (1950), *1 Williston on Contracts* §28 (3rd ed. 1957)). The *V'Soske* Court goes on to say "To overcome the reasonable inference we draw from the language of the correspondence that the parties did indeed intend thereby to create a binding contract, appellees must do more than merely point to the circumstances that a formal document was contemplated; they must show either that both parties understood that their correspondence was to be of no legal effect or that V'Soske had reason to know that Barwick contemplated that no obligations should arise until a formal contact was executed."

In *Arnold Palmer Golf Company v. Fuqua Industries, Inc.*, 541 F.2d 584 (6th Cir. 1976) the Sixth Circuit Court of Appeal was faced with a similar fact pattern as before this Court. The District Court granted summary judgment for the defendant on a breach of contract claim, finding the "Memorandum of Intent" that formed the basis of the claim was non-binding because it stated that the Memorandum was subject to the parties approving a "definitive agreement . . . satisfactory to both parties and their respective counsel." *Id.* at 586. The

---

[5] At the time of the transaction, the Plane was temporarily being kept at the hangers of Midcoast Aviation, located in Cahokia, Illlinois.

District Court reversed the summary judgment, ruling that the question of whether the parties intended a contract is a factual one, and "except in the clearest cases is for the finder of fact to resolve." *Id.* at 588 (citing *inter alia 1 Corbin on Contracts,* §30). In discussing other similar opinions, the *Palmer* Court identifies other cases where summary judgments or dismissals in favor of defendants were dismissed by the appellate courts because the question whether the parties intended that a letter of intent be binding was a question of fact for trial. *See, Itek Corp. v. Chicago Aerial,* 248 A.2d 625 (Del. 1968)(Delaware Supreme Court reversed summary judgment in favor of defendant because language of letter of intent stating that terms were "subject to" an agreement containing terms and conditions the parties can agree upon was insufficient for a determination of intent as a matter of law.), *Melo-Sonics Corp. v. Cropp,* 342 F.2d 856 (3rd Cir. 1965)(Court reverses dismissal of complaint where acceptance of oral offer was made by writing that included statement that agreement was "subject to" entering into formalized agreement. )

Florida courts have also refused to enter summary judgment on similar grounds. In *Edward L. Nezelek, Inc. v. Southern Bell Telephone and Telegraph Co.,* 383 So.2d 979 (Fla. 4th DCA 1980), the Florida District Court reversed a directed verdict entered for defendant. The appellate court ruled that mere fact that acceptance of contractor's offer stated that parties were to enter into written contract was not sufficient to take question away from jury.

In a Federal District Court case applying Florida law, the District Court of Kansas ruled that the mere fact that an agreement signed by the parties mentions the subsequent execution of a definitive purchase agreement raises a material question of fact under Florida law. *Buford v. First Sunset Development, Inc.,* 1996 WL 294332 (D. Kan. May 21, 1996).

Additionally, none of the cases cited by Defendants in support of their argument are dispositive. In three of the state court cases cited for the general proposition that no binding agreement was entered into, the state District Courts of Appeal ruled based on the stated reason that letters of intent specifically identified additional terms that were left to be

7

negotiated. *Suggs v. Defranco's, Inc.,* 626 So.2d 1100 (Fla. 1st DCA 1993)(judgment for plaintiffs reversed because letter used as basis for claim left open a number of essential terms for future negotiations), *Mid-State Federal Savings Bank v. Marketing and Management Associates, Inc.,* 570 So.2d 1016 (Fla. 5th DCA 1990)( judgment for plaintiff reversed because letter specifically identified material issues which were left open for further negotiation), and *777 Flagler Co. Amerifirst Bank,* 559 So.2d 1210 (Fla. 4th DCA 1990)(The letter agreement specifically stated that it was not complete in material respects and would not become complete until the parties agreed on the form and substance of the exhibits). Similarly, the New York case cited by Defendant, *Rogers v. Mattucci,* 230 A.D.2d 725 (Supreme Court, Appellate Division, 2d Dept. N.Y. 1996), the court does not find that the agreement in that case was not enforceable simply because it contemplated a future writing, but rather that the parties contemplated future negotiations of essential terms that were never agreed upon.

In *Club Eden Roc, Inc. v. Tripmasters, Inc.,* 471 So.2d 1322 (Fla. 3rd DCA 1985) relied heavily upon by Defendant, an action for breach of an oral agreement, the court found that there was no evidence to support a finding that a contract existed. While the court points to language contained in a letter from the defendants that contains a price quote and language that would make the quote subject to entering into a formal agreement, the court made its ruling in favor of defendants after a jury trial to determine whether an oral agreement was entered into. The case was not decided as a matter of law on the face of a written letter agreement.

Further, in *Midtown Realty, Inc. v. Hussain,* 712 So.2d 1249 (Fla. 3rd DCA 1998), the Florida appellate court held that letter of intent that stated it was a "proposal" was not an "offer" that could be accepted to form a binding contract. The court specifically distinguished a letter which states it is an "offer" to one which states that it is a proposal. The court ruled that a proposal is an "initial overture" for consideration by the other party, which

8

contemplates the making of an offer at a later time. As a result, the acceptance of a proposal does not ripen into a contract.

## II.

## AS AN ENFORCEABLE AGREEMENT THE PARTIES FAILED TO ACT IN GOOD FAITH IN TRYING TO PROVIDE A DEFINITIVE AGREEMENT

Defendant does not appear to deny that an implied duty of good faith and fair dealing exists if a contract has been entered into by the parties. Moreover, it is undisputed that five days before the deadline for the parties to execute a final agreement, International Paper terminated all negotiations, and refused to allow Turnberry Charters to continue with the transaction. As a result, if the court finds that summary judgment should be denied on Count I, breach of contract, because a question of fact exists for the trier of fact, then necessarily summary judgment should be denied as to Count II.

## III.

## DEFENDANTS MISCONSTRUE PLAINTIFFS CLAIM FOR BREACH OF THE AGREEMENT OF GOOD FAITH AND FAIR DEALING.

While it is true Count II is intended to refer to the implied duty of good faith and fair dealing included in every contract, Count III is intended to allege that International Paper in fact entered into an agreement to act in good faith in further negotiations which were intended to culminate in a sale of the Plane between the parties.

The case before this court finds many comparisons to the case of *Channel Home Centers, Division of Grace Retail Corporation v. Grossman*, 795 F.2d 291 (3rd Cir. 1986). In *Channel Homes* the plaintiff entered into an agreement with the defendant which effectively expressed the plaintiff's intent to lease certain commercial property from the defendant. The trial court ruled that the letter agreement between the parties did not constitute a binding

agreement. However, on appeal the Circuit court ruled that the letter of intent was a binding agreement for the parties to negotiate in good faith.

The *Channel Home* Court ruled that under Pennsylvania law parties can enter into a mutually binding obligation to negotiate in good faith. *Id. at 298*. The Court ruled that by unilaterally terminating negotiations and entering into an agreement with another party, the defendant breached this complete enforceable contract. While it is recognized that in *Channel Home* the parties agree no other negations would take place, a point distinguishable from this case, the overriding issue in the *Channel Home* case was whether the defendants could unilaterally terminate negotiations. In fact, in that case, there was no deadline for completion of negotiations, a point the appellate court stated it would interpret to mean a reasonable amount of time. Yet, in the case before this Court, the letter agreement specified a date upon which the negotiations must be completed. Here International Paper admittedly unilaterally terminated the negotiations five days before the deadline.

In a New York case, the Federal District Court for the Southern District of New York drafted a lengthy opinion identifying the possibility that the parties to an agreement that falls short of being a binding agreement on the principal of the agreement, can be considered a contract to negotiate in good faith any incomplete terms so as to reach a final definitive agreement. *Teachers Insurance and Annuity Association of America v. Tribune Company*, 670 F.Supp. 491 (S.D.N.Y. 1987).

### CONCLUSION

For the reasons set forth herein, Plaintiff requests that the Court deny Plaintiff's Motion for Summary Judgment or Alternatively for Partial Summary Judgment, and allow the evidence in this matter to be presented to the trier of fact.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U. S. Mail to Richard C. Hutchison, Esq. and Heather C. Keith, Esq., Holland & Knight LLP, One East Broward Blvd., 13th Floor, P.O. Box 14070, Fort Lauderdale, FL 33302-4070, this ____ day of January, 2000.

REIMER & ROSENTHAL LLP
Counsel for Plaintiff
3801 Hollywood Blvd., Suite 350
Hollywood, FL 33021
(954) 893-9800
(954) 893-6704 facsimile

By: _____
DAVID H. REIMER
FL BAR NO: 909520

11