### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

#### CASE NO. 00-6111-CIV-(DIMITROULEAS/Johnson)

TURNBERRY CHARTERS, INC.

    Plaintiff,

vs.

INTERNATIONAL PAPER COMPANY

    Defendant.

_____ /



### DEFENDANT INTERNATIONAL PAPER COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT LIMITING DAMAGES

Defendant, International Paper Company ("IP"), pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rules 7.1 and 7.5, replies in support of its Motion for Final Summary Judgment against Plaintiff Turnberry Charters, Inc. ("Turnberry") or, alternatively, for Partial Summary Judgment Limiting Turnberry's Damages as follows:

### *INTRODUCTION*

Having unmistakably demonstrated in its Response[1] that no dispute of material fact exists regarding the <u>creation</u> *and* the <u>contents</u> of the controlling subject Letter Offer[2] drafted by Turnberry's agent, Dennis Lainey, Turnberry attempts to avoid the inevitable result of summary judgment in IP's favor on all three counts of its complaint by (a) applying an incorrect legal standard and analysis; (b) raising only irrelevant, non-material and sometimes misstated--and unsupported by the record--facts; and (c) misconstruing factually indistinguishable case law.

Moreover, common sense and logic must question-and Turnberry's Response fails to address-how the Letter Offer could ever be considered binding upon the parties when, Turnberry reserved the unfettered right to a full refund of its deposit, as discussed herein on page 9.[3]

---

[1] Turnberry's Response to IP's Motion for Summary Judgment or Alternatively For Partial Summary Judgment Limiting Damages shall be referred to herein as the "Response."

[2] For purposes of consistency, IP will continue to utilize in this Reply the designations employed in its Motion for Summary Judgment.

[3] If Turnberry's untenable premise is accepted, that the parties intended to be bound to the Letter Offer, then fundamental contract principles are tossed out the window, because the Letter Offer would necessarily and unjustly bind IP while Turnberry would be free to walk away at any time with its deposit and with impunity.

## *LEGAL ARGUMENT*

As it is perfectly clear from the *unambiguous and plain language of the Letter Offer*-- drafted solely by Mr. Lainey on behalf of Turnberry and completely unchanged by anyone at IP-- that Turnberry itself (as well as IP) did not intend the Letter Offer to constitute a binding and enforceable contract, as a matter of either Florida or New York law, this Court should enter final summary judgment in favor of IP on all three counts asserted in Turnberry's complaint.

### POINT I

### REGARDLESS OF WHETHER NEW YORK OR FLORIDA LAW GOVERNS, IP IS STILL ENTITLED TO SUMMARY JUDGMENT ON ALL COUNTS

In the Response, Turnberry suggests that New York law should govern the determination of IP's Motion for Summary Judgment.[4] Even assuming that Turnberry's suggestion is correct-- and IP does not concede that it is--the ultimate conclusion reached in IP's Motion for Summary Judgment remains static because: (a) New York has adopted Article 2 of the Uniform Commercial Code, in form almost identical to that of Florida[5]; and (b) as will be discussed below, an analysis under New York law leads to the same conclusion that the Letter Offer, as a matter of law, was not intended to constitute a binding contract for the sale of the Plane.[6]

### POINT II

### IP IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I BECAUSE, AS A MATTER OF LAW, THE PLAIN AND UNAMBIGUOUS LANGUAGE OF THE LETTER OFFER DEMONSTRATES AN INTENT NOT TO BE BOUND

It is axiomatic under both New York and Florida law that no contract encompassing the sale of a good will exist unless both parties intended to enter into such a relationship. *See* Fla. Stat. § 672.204(3); *see also* N.Y. UCC § 2-204.

---

[4] As part of its argument therefor, Turnberry erroneously states, without citing to any record evidence--as it tends to do throughout its Statement of Material Facts--that the Plane was normally housed in New York. *See* Response, p. 5. However, the Plane was normally housed in Union Camp's facility located in Morristown, New Jersey.

[5] Of crucial importance, New York UCC section 2-204 is identical to Florida Statute section 672.204, governing formation of a contract. Both statutes require a threshold *intent to be bound* before any agreement leaving one or more open terms may be considered a binding contract. *Compare* N.Y. UCC Law § 2-204(3) (McKinney 2000) *with* Fla. Stat. § 672.204(3).

[6] Even if the Court should determine that New York law applies with respect to whether *vel non* the Letter Offer constitutes a contract, any questions pertaining to remedies, if any, are to still be decided under Florida law. *See Goodman v. Olsen*, 305 So. 2d 753, 755 (Fla. 1974); *see also Jemco Inc. v. United Parcel Serv., Inc.*, 400 So. 2d 499, 501 n.6 (Fla. 3d DCA 1981) (agreeing that remedy issues are to be determined by the laws of the forum court).

2

Moreover, when dealing with a clear and unambiguous writing, in both New York and Florida[7], the intent of the written document *must* be determined, by the Court--as a matter of law--from within the four corners of the document itself. *See Fernandez v. Fernandez*, 2000 WL 1875029 *1 (N.Y. App. Div. Dec. 27, 2000) (quoting that it is well established that "[i]nterpretation of an unambiguous contract provision is a function for the court, *and matters extrinsic to the agreement may not be considered* . . ." (citation omitted) (emphasis added)); *see also Highland Sand & Gravel, Inc. v. Squicciarini*, 709 N.Y.S.2d 91, 92 (App. Div. 2000) (holding that the intent of the parties must be gleaned from the unequivocal language employed in the document); *Transmedia Restaurant Co. v. 33 E. 61 St. Restaurant Corp.*, 710 N.Y.S.2d 756, 761 (Sup. Ct. 2000).

In this case, neither party argues that the Letter Offer's terms were anything other than clear and unambiguous. As such, and completely contrary to Turnberry's position[8], under both New York and Florida law, the intent of both IP and Turnberry in executing the Letter Offer must be gleaned from the Letter Offer itself, by the Court, as a matter of law, and not from Turnberry's agent's subjective, after-the-fact belief of what the intent in execution was.[9]

### A. As with Florida, New York Case Law Establishes that the Letter Offer Did Not Bind Either IP or Turnberry to its Terms

Aside from *Rogers v. Matucci*, 230 A.D.2d 725 (N.Y. App. Div. 1996)--discussed in IP's Motion--various other factually analogous New York decisions help lead to the inescapable conclusion that the parties could not have intended to be bound by the Letter Agreement, pursuant to its unequivocal and undisputed terms. *See, e.g., Becher v. Becher*, 706 N.Y.S.2d 619, 620 (Sup. Ct. 2000) (finding that the bilaterally executed document constituted a mere

---

[7] For a thorough discussion and analysis of the pertinent Florida law on this matter, please refer to Point II of IP's Motion for Summary Judgment. As the analysis therein is extensive and complete, no additional Florida cases will be relied upon herein.

[8] In the Response, Turnberry erroneously argues that the parties' intent in executing the Letter Offer is a question of fact; however, because neither party argues that the language thereof is unclear or ambiguous, the court must construe the Letter Offer according to the plain meaning of its unequivocal language.

[9] In this regard, Turnberry argues that Mr. Lainey's deposition testimony establishes that by executing the letter, both parties intended to be bound thereto. *See* Response, p. 5-6. However, in light of the controlling law--that the intent of the Letter Offer is to be discerned from the plain meaning of the language utilized therein--this fact is non-dispositive and irrelevant, just as it is irrelevant that Mr. Dahlberg believed that the Letter Offer did not constitute a binding contract. Additionally, Turnberry's erroneous factual assertion that IP sold the Plane to Aero Toy pursuant to a one page letter agreement (*see* Response, p. 4) is similarly irrelevant, *and* patently controverted by the actual contract between those two parties, attached to IP's Motion as Exhibit I.

3

unenforceable agreement to agree because it provided that a future and "more comprehensive" agreement would be prepared by an attorney); *Chatterjee Fund Management. L.P. v. Dimensional Media Associates*, 260 A.D.2d 159, 159 (N. Y. App. Div. 1999) (finding no enforceable contract where the written document was subject to the "negotiation of a ***definitive agreement*** and documentation."); *Andor Group, Inc. v. Benninghoff*, 219 A.D.2d 573, 573 (N.Y. App. Div. 1995) (holding that the subject letter of intent was unenforceable because it left out material terms and it contemplated the future execution of a formal contract); *Carmon v. Soleh Boneh Ltd.*, 206 A.D.2d 450, 450-51 (N.Y. App. Div. 1994) (declaring a mutually executed letter of intent an unenforceable agreement to agree because it contained many open terms and provided absolutely no methodology for determining these terms); *Danton Constr. Corp. v. Bonner*, 173 A.D.2d 759, 760 (N.Y. App. Div. 1991) (ruling that the fully executed option letter amounted to an unenforceable agreement to agree because: (a) it left "significant terms of the proposed [transaction] open to future negotiation"; and (b) it contemplated the execution of a ***formal*** contract); and *Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541, 544 (N.Y. 1981) (holding that agreements that leave material terms open to future negotiation are unenforceable as mere agreements to agree).

Accordingly, when the undisputed, unambiguous terms of the Letter Offer are juxtaposed against either New York or Florida law, the simple conclusion is that both IP and Turnberry executed an unenforceable agreement to agree, and were free to walk away at any time. [10]

## B.   Turnberry's Cases Are Inapposite

In a poor attempt to divert the Court's attention away from the factually analogous cases cited by IP in its Motion, Turnberry discusses six totally incongruous cases (three of which apply law contrary to that of New York and Florida) to substantiate its proposition that the Letter Offer is binding (or at least that it is a question of fact). However, when these cases are properly and fully analyzed, it becomes apparent that they are inapposite, and unpersuasive.

First, *V'Soske v. Barwick* fails to assist Turnberry because there the parties had already agreed to ***all*** of the material terms of the transaction. 404 F.2d 498, 499-500 (2d Cir. 1968). As

---

[10] This result is not altered by the fact that the Letter Offer used the word "offer" therein, or that Mr. Lainey or Mr. Dahlberg referred to it as an offer, because the substance of the agreement speaks volumes more, and is vastly more important, than the moniker attached to it. *See Mann Theaters Corp. v. Mid-Island Shopping Plaza Co.*, 94 A.D.2d 466, 472 (N.Y. App. Div. 1983); *see also Rubio v. Rubio*, 347 So. 2d 1093, 1094-95 (Fla. 2d DCA 1977).

4

such, the court found that the "*mere*" fact that a future agreement was contemplated did not preclude the prior one from having a binding effect. *Id.* at 499. Here, no reasonable argument can be made that all (or even most) of the material terms were reached. The Letter Offer itself provides it was "subject to the good faith efforts of both parties to *negotiate* mutually agreeable *terms* and *conditions* of *the sale*. *See* Motion Ex. D (emphases supplied). Accordingly, more needed to be accomplished than just *merely* executing a future agreement.

Likewise, *Buford v. First Sunset Development, Inc.* is unpersuasive. 1996 WL 294332 (D. Kan. 1996). There, the court refused to enter summary judgment *solely* because the executed agreement mentioned the execution of a future purchase agreement. *Id.* at *2. Conversely, not only did the terse Letter Offer state *three times* that it was *subject to* a *"definitive sales agreement,"* but it **also** stated that: (a) the sale was conditioned upon the parties' ability to negotiate mutually agreeable sales terms and conditions; (b) the prerequisite definitive sales agreement would have to be in "form and substance" mutually acceptable to the parties; (c) the "good faith" deposit would be *fully refundable* until the definitive sales agreement is executed; and (d) that the Letter Offer would expire on its own terms if the parties failed to execute the contemplated definitive sales agreement. Certainly, the facts of these two cases cannot be reasonably compared, especially in light of the analogous cases cited by IP, both in the Motion and herein, demonstrating that it is entitled to judgment as a matter of law.

For some inexplicable reason, Turnberry completely misses the mark by citing to *Edward L. Nezelek, Inc. v. Southern Bell Telephone and Telegraph Company.* 383 So. 2d 979 (Fla. 4th DCA 1980). Unlike *sub judice*, the issue in *Southern Bell* was *not* whether a preliminary contract was binding *vel non* because of open terms or the contemplation of a future agreement, but rather whether the formal contract was binding because one party thereto *did not sign it. See id.* at 981 (writing "[w]e turn to the next question of whether a contract ever came into existence in light of the failure of the Telephone Company *to execute a copy*." (emphasis supplied)). Obviously, this case does not support the proposition for which it was cited.

Lastly, *Itek Corporation v. Chicago Aerial Industries, Inc.*, 248 A.2d 625, 629 (Del. 1968), *Melo-Sonics Corp. v. Cropp*, 342 F.2d 856, 859 (3d Cir. 1965) [11] and *Arnold Palmer Golf*

---

[11] Furthermore, *Melo-Sonics* is inapplicable because *all* of the conditions to contracting were previously agreed upon by the parties and the *only* thing left for the parties to do was to put their completed agreement in writing. 342 F.2d at 860. Such is not the case at bar.

5

*Company*, 541 F.2d 584, 588 (6th Cir. 1976) cannot be relied upon by Turnberry because they are predicated upon Illinois law, Pennsylvania law and Ohio law, respectively, which all permit (or at least they did between 25 and 35 years ago) the trier-of-fact to make the determination of whether a preliminary agreement is binding. This runs completely counter to both New York and Florida law, which mandate that the intent of unambiguous documents--such as the Letter Offer--must be determined by the Court, as a matter of law.

Accordingly, the Court should disregard the case law cited by Turnberry, and grant IP's motion for summary judgment on the face of the unequivocal Letter Offer.

### C.   Turnberry Cannot Distinguish IP's Authorities Cited In its Motion

Turnberry, in attempting to distinguish the cases cited by IP in its Motion for Summary Judgment, omits significant and controlling facts, and fails to completely recognize the rationales upon which those cases were decided.

### POINT III

### IP IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II BECAUSE THE LETTER OFFER DID NOT CONSTITUTE A BINDING CONTRACT

Without argument, both New York and Florida recognize an implied duty of good faith and fair dealing. *See Middle Village Assocs. v. Pergament Home Ctrs., Inc.*, 708 N.Y.S.2d 840, 844 (Sup. Ct. 2000); *see also Khosrow Maleki, P.A. v. M.A. Hajianpour, M.D., P.A.*, 2000 WL 275847 (Fla. 4th DCA Mar. 15, 2000). However, this implied warranty ***does not exist*** absent a valid and binding contract. *See Lakeville Pace Mech., Inc. v. Elmar Realty Corp.*, 714 N.Y.S.2d 338, 342 (App. Div. 2000); *see also Bernstein v. True*, 636 So. 2d 1364, 1366 (Fla. 4th DCA 1994).

Because the Letter Offer constitutes nothing more than an unenforceable agreement to agree in both New York and Florida, Turnberry cannot, as a matter of law, maintain a cause of action for breach of the implied duty of good faith, as Turnberry implicitly concedes in the Response (p. 9).

Accordingly, IP is entitled to a judgment, as a matter of law on count II of Turnberry's complaint.

**POINT IV**

**IP IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III BECAUSE THE LETTER OFFER IS NOT A BINDING AGREEMENT TO NEGOTIATE IN GOOD FAITH** [12]

As demonstrated above, the Letter Offer was merely an unenforceable agreement to agree, binding both IP and Turnberry to ***nothing***. Notwithstanding, Turnberry now seemingly attempts to classify the Letter Offer as some type of commitment requiring IP to negotiate in good faith.[13] This attempt fails as the authorities cited for this proposition are completely incompatible and factually-fatally distinguishable to the present case.

Turnberry's reliance upon *Channel Home Centers v. Grossman* is severely misplaced. 795 F.2d 291 (3d Cir. 1986). Although it is true that the Court in *Grossman* found that the letter of intent between the parties constituted a "binding agreement to negotiate in good faith" (*see id.* at 300), this holding was premised upon determinative facts and circumstances which do not exist in the pending case.

**First**, the long and very detailed letter of intent in *Grossman* contained "a plethora" of the salient terms, which were to eventually be included in the final contract between the parties. *Id.* at 293, 293 n.2. Here, although the Letter Offer contained the object to be purchased, the price to be paid, and how funding was to be arranged (*see* Motion Ex. D), it did not discuss or settle crucial terms that still needed to be negotiated between the parties, such as: (a) what would occur in the event that discrepancies were discovered during the Plane's pre-purchase inspections; (b) what would occur in the event the Plane was damaged prior to closing; (c) the Transfer of Title and requisite Title Instruments, and the transfer of the Plane's engine service plan and the Plane's CAMP agreement; (d) how taxes and other assessments were to be handled; (e) what would occur in the event of failure or delay in delivery; and (f) warranties, if any.

---

[12] Turnberry's assertion in the Response that count III was "intended to allege that [IP] in fact entered into an agreement to act in good faith in further negotiations" (*see* Response, p. 9) completely contradicts and runs afoul of Turnberry's averment in the complaint that IP "implicitly agreed to negotiate in good faith . . . ." *See* Complaint ¶ 33 (emphasis added). Thus, Turnberry's contention that IP misconstrued Turnberry's claim is unfounded and flagrantly incorrect; and Point III of the Response should be disregarded as inconsistent with Turnberry's pleading.

[13] IP takes umbrage at the direct allegation that it failed to negotiate in good faith. Negotiations failed because IP and Turnberry could not reach a mutually satisfactory agreement as to crucial terms of a proposed final deal. Notwithstanding, it is totally irrelevant to this case whether or not IP negotiated in good faith, as both parties in the Letter Offer agreed to nothing more than to try to reach a final ***"definitive agreement"*** before a date certain. *See* Motion Ex. D.

7

**Second**, there the letter of intent stated that the agreement was "subject to the terms and conditions of this letter." 795 F.2d at 293 n.2. Conversely, as shown above, the subject Letter Offer did not contain numerous relevant terms and conditions. Instead, it provided that the agreement was subject to the parties' ability to negotiate (in the future) "mutually agreeable terms and conditions *of the sale*." *See* Motion Ex. D.

**Third**, the *Grossman* letter of intent provided that the putative lessor would withdraw the subject property from the rental market and ***only negotiate*** pursuant to the letter of intent. 795 F.2d 299. Here, *nothing* in the Letter Offer precluded IP from continuing to market the Plane to third parties after the execution of the Letter Offer, and nothing prevent IP from negotiating for the sale of the Plane with anyone other than Turnberry. *See* Motion Ex. D. Turnberry's representative similarly testifies (incontrovertibly) that nothing precluded IP from marketing the Plane or negotiating with others following execution of the Letter Offer. *See* Lainey Dep., 76:4-14.

**Fourth**, the *Grossman* court gave great weight to the fact that the putative lessee hired numerous people and expended substantial sums of money over an almost two month period in furtherance of the letter of intent. Here, Turnberry has proffered no record evidence demonstrating that it spent large (or even insignificant) sums of money in furtherance of the Letter Offer.

**Finally**, a crucial provision contained in the subject Letter Offer was glaringly absent from the letter of intent in *Grossman*. Specifically, the Letter offer had a set expiration; to wit, the "offer" would become "null and void" at 5:00 p.m., June 28, 1999, "if the parties have not **agreed to and executed a definitive sales agreement** prior to that time." *See* Motion Ex. D (emphases supplied). In sum, *Grossman* cannot support Turnberry's argument that the Letter Offer constituted any type of commitment to negotiate in good faith.

Additionally, Turnberry cites *Teachers Insurance and Annuity Association v. Tribune Company* for the proposition that the Letter Offer created a binding commitment. 670 F. Supp. 491 (S.D.N.Y. 1987). However, that case is similarly distinguishable on its facts. There, the court found that the designated "commitment letter" executed by the parties was a binding commitment under the following circumstances:

a) The commitment letter contained a two-page Summary of Proposed Terms, covering all of the basic terms of the agreement (*id.* at 494);

8

b) The commitment letter stated that the future contract would contain the "'usual and customary' representations and warranties, closing conditions, other covenants, and events of default . . . " (*id.*);

c) The commitment letter stated "[u]pon receipt . . . of an accepted counterpart of this letter, our agreement . . . ***shall become a binding agreement*** between us." (*id.* (emphasis supplied); and

d) When Tribune signed the commitment letter, it used the words "Accepted and agreed to." (*id.* at 499).

Undeniably, the subject Letter Offer is markedly different from the *Tribune* commitment letter. The Letter Offer did not contain a summary of proposed terms, and it certainly did not state that it would contain any "usual and customary" terms of any sort. Instead, it stated that it was subject to the future negotiation of "mutually agreeable terms and conditions . . . ." *See* Motion Ex. D.

Furthermore, the subject Letter Offer unmistakably contains no "binding" language, and IP never executed the letter marking that it was "Accepted and agreed to." *See* Motion Ex. D. Not only does it lack binding language, it unambiguously provided Turnberry with the right to walk away at any time. Specifically, the Letter Offer states:

> This deposit ***shall***, of course, ***be fully refundable*** until such time as a definitive sales agreement shall be executed. . . ." *Id.* (emphases added).

Certainly, if Turnberry could take back its money at ***any*** time for ***any*** reason, with absolutely no restrictions or advance notice prior to reaching a final agreement, it cannot now argue that it considered itself bound to the Letter Offer. Since Turnberry's deposit was fully refundable, it could not have been bound to an agreement. Consequently, IP too could not have been bound: a contract did not exist.

### POINT V

### TURNBERRY HAS CONCEDED THAT ANY DAMAGE RECOVERY IT OBTAINS MUST BE OFFSET BY THE AMOUNTS PAID TO AERO TOY FOR IMPROVEMENTS TO THE PLANE PRIOR TO DELIVERY

In Point V of IP's Motion for Summary Judgment, IP details extensive improvements and upgrades requested by Turnberry to be made to the Plane prior to closing with Aero Toy. Moreover, Turnberry's corporate representative testified that ***all*** but one of these upgrades were actually incorporated into the Plane. *See* Aitkens Dep., 74:4 to 77:5; 84:15 to 85:21. Thus, in essence, Turnberry bought the same Plane that it would have bought from IP (if they could have

9

agreed upon the material terms) with substantial improvements and upgrades (things it certainly would not have gotten had it purchased the plane from IP).

Nowhere in Turnberry's Response's Statement of Material Facts does Turnberry proffer *any* evidence tending to dispute IP's evidence that these improvements and upgrades were: (a) made to the Plane; or (b) included in the $7,700,000.00 price paid to Aero Toy for the Plane.[14] In fact, Turnberry never raises the issue at all anywhere in the Response.

As such, all of IP's facts concerning the improvements made to the Plane must be deemed admitted (*see* S.D. Fla. L.R. 7.5), and IP is therefore entitled to an offset against any Turnberry recovery, for the value of those improvements.

### POINT VI

### TURNBERRY HAS CONCEDED THAT IS NOT ENTITLED TO RECOVER ANY DAMAGES FOR SPARE AIRCRAFT PARTS

As with the improvements and modifications to the Plane, Turnberry proffers no evidence in its Statement of Material Facts tending to dispute IP's proof that Turnberry would *not* have been entitled to any purported spare aircraft parts had Turnberry actually purchased the Plane from IP. Again, Turnberry failed to raise the issue at all in the Response.

Accordingly, IP's facts contained it its Statement of Material Facts must be deemed admitted. *See* S.D. Fla. L.R. 7.5. Because no spare aircraft parts are referenced in the Letter Agreement and because Turnberry has submitted absolutely no facts tending to demonstrate otherwise, Turnberry must not be permitted to recover any damages related to spare aircraft parts.

### *CONCLUSION*

For the reasons stated above, and in IP's Motion for Summary Judgment, summary judgment should be entered in favor of IP, and against Turnberry, on all three counts raised in Turnberry's complaint. Alternatively, if the Court denies summary judgment on any of the counts, then Turnberry's recovery, must be reduced by the value of the additions and renovations

---

[14] As stated in IP's Motion for Summary Judgment (p.7, n.12), Turnberry's exact amount of damages sought is uncertain because Turnberry failed to produce a corporate representative to testify about its alleged damages. In violation of this Court's Order, Turnberry still has failed to produce such witness, as set forth with more detail in IP's Motion To Preclude Evidence Regarding Plaintiff's Alleged Damages, or Alternatively, to Strike Plaintiff's Damages Claims For Violating this Court's January 11, 2001 Order, filed contemporaneously herewith.

made to the Plane by Aero Toy, and must not include damages for any purported spare parts.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for International Paper
One East Broward Boulevard, 13th Floor
P.O. Box 14070
Fort Lauderdale, FL 33302-4070
Tel: (954) 525-1000
Fax:(954) 463-2030
Email: rhutch@hklaw.com; pminoff@hklaw.com

By: _____
Richard C. Hutchison
Florida Bar No. 709360
Paul H. Minoff
Florida Bar No. 0182079

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this 2nd day of February, 2001, a true and correct copy of the foregoing has been furnished via U.S. Mail to: David H. Reimer, Attorney for Plaintiff, Reimer & Rosenthal, LLP, 3801 Hollywood Blvd., Suite #350, Hollywood, Florida 33021.

HOLLAND & KNIGHT LLP

By: _____
Richard C. Hutchison

FTL1 #527995 v2

11