UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6111-CIV-DIMITROULEAS

TURNBERRY CHARTERS, INC.,

    Plaintiff,

vs.

INTERNATIONAL PAPER COMPANY,

    Defendant.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant, International Paper Company's Motion for Final Summary Judgment or, Alternatively, for Partial Summary Judgment Limiting Damages, filed herein on December 21, 2000. The Court notes that Plaintiff filed an untimely Response following this Court's Order to Show Cause why a Response had not been filed. Nonetheless, the Court has carefully considered the merits of Defendant's Motion, and is otherwise fully advised in the premises.

### I. BACKGROUND

Defendant acquired title to a 1981 Canadair Challenger CL600 aircraft. Plaintiff became interested in purchasing the aircraft. Plaintiff's agent, Dennis Lainey contacted Ed Dahlberg, who was the president of a company Defendant contracted with to sell the aircraft. After some negotiations, Lainey sent a letter to Jill Carter, Defendant's Senior Vice President.

The main crux of this action revolves around that letter, which Plaintiff argues constitutes a contract, and Defendant contends is either an offer or an agreement to negotiate. The letter

1



states that the offer will become null and void at 5:00 p.m., June 28, 1999. Plaintiff placed a refundable $100,000 deposit in escrow, and attempted to inspect the plane. Dahlberg sent a draft of an aircraft sale agreement to Lainey on June 21, 1999, which was unsigned by either party. Lainey returned the agreement, on June 23, 1999, with changes proposed by Plaintiff. The parties did not execute the aircraft sale agreement, and the deadline elapsed.

Subsequently, Defendant sold the aircraft to Aero Toy Store for $7,000,000. Plaintiff then purchased the aircraft from Aero Toy Store for $7,700,000, after certain modifications were made to the aircraft.

Plaintiff filed this action in the United States District Court, Middle District of Florida, which was subsequently transferred to this Court. The Complaint alleges: 1) Breach of contract; 2) breach of warranty of good faith, fair dealing and commercial reasonableness; and 3) breach of duty to negotiate in good faith.

Defendant now files this Motion for Summary Judgment, arguing that Plaintiff's letter does not constitute a binding and enforceable contract; and since no binding contract existed, Plaintiff cannot maintain the count for breach of warranty of good faith or for duty to negotiate in good faith. Additionally, Plaintiff cannot recoup any sums for improvements, modifications, additions to the plane nor can Plaintiff recover damages for spare parts. Plaintiff responds to the Motion by arguing that there remains a genuine issue of material fact as to whether the parties intended the letter agreement be a binding agreement, the letter was a binding agreement and therefore the parties failed to act in good faith in attempting to provide a definitive agreement and the parties were obligated to negotiate in good faith. The Court notes that Plaintiff fails to address Defendant's argument regarding the limitation of Plaintiff's damages.

2

## II. DISCUSSION

### A. Summary Judgment

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323(1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P.

3

56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

### B. Breach of Contract

Plaintiff argues that New York law should apply, whereas Defendant argues that although Florida law should apply, the laws of each state are very similar in regard to formation and enforcement of contracts. "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state." Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996); Klaxon Co. v. Stentor Electrical Manufacturing Co., 313 U.S. 487, 496 (1941). Florida uses the traditional lex loci delicti in determining what law applies in contract claims. Goodman v. Olson, 305 So.2d 753 (Fla. 1974). Plaintiff contends that the contract was executed in New York and the plane is normally located in New York, and therefore, New York law applies. Defendant argues that Florida and New York law are similar in their determinations as to whether a contract was formed, and determining the controlling elements of the contract. This Court agrees, that Florida and New York law are virtually the same when determining whether a contract was formed. The Court notes that if the contract was executed or was to be executed, then New York

4

is the place of said execution, and New York law applies.

It is a fundamental tenet of contract law that "enforceable legal rights do not arise from contract negotiations until both parties consent to be bound or, in any event, manifest that consent to each other. More is needed than even mutual agreement on all terms under negotiation; there must be a manifestation of a consent to be bound to those terms as of a point in time before a contract may be found." Chrysler Capital Corporation v. Southeast Hotel Properties L.P., 697 F.Supp. 794, 799 (S.D.N.Y. 1988); Reprosystem B.V. v. SCM Corp., 727 F.2d 257, 261 (2nd Cir. 1984), *cert. denied* 469 U.S. 828 (1984); Goff v. Indian Lake Estates, Inc., 178 So.2d 910, 911 (Fla. 2nd DCA 1965) ("It is essential to the creation of a contract that there be a mutual or reciprocal assent to certain and definite proposition. Until the terms of an agreement have received the assent of both parties, the negotiation is open and imposes no obligation upon either. Without a meeting of the minds of the parties on an essential element there can be no enforceable contract.")

Under Florida and New York Law, when interpreting a contract, "the intent of the parties governs." Forbes v. Cendant Corporation, 205 F.3d 1322 (2nd Cir. 2000); American Express Bank Ltd. v. Uniroyal, Inc., 562 N.Y.S.2d 613, 614 (1st Dep't 1990); American Home Assurance Company v. Larkin General Hospital, Ltd., 593 So.2d 195, 197 (Fla. 1992); Underwood v. Underwood, 64 So.2d 281 (Fla. 1953). The intent is inferred from the plain meaning of the language employed in the contract. Id.; See Andy Warhol Found. For the Visual Arts., Inc. v. Federal Ins. Co., 189 F.3d 208, 215 (2d Cir. 1999); Air Products and Chemicals, Inc. v. The Louisiana Land and Exploration Company, 806 F.2d 1524 (11th Cir. 1986).

The June 19, 1999 letter from Plaintiff to Defendant is clear and unambiguous. The letter

5

is an offer to contract, but not a contract. This is clear from the language of the letter. The first paragraph of the letter clearly establishes that Plaintiff "hereby offers $7,000,000 U.S. or the above referenced aircraft, subject to the good faith efforts of both parties to negotiate mutually agreeable terms and conditions of the sale, and the timely execution and delivery of a definitive sales agreement in form and substance mutually agreeable to the parties." This paragraph clearly establishes that the letter is an offer, that the terms and conditions of the sale have been discussed, but have not been agreed upon, and a sales agreement needs to be drawn up, agreed upon and executed before the deal is final.

The third paragraph in the letter also evidences the fact that the letter is not a final agreement between the parties. Plaintiff represents that the deposit was to show a sincere interest in purchasing the aircraft, and the deposit shall be "fully refundable until such time as a definitive sales agreement shall be executed, and then shall become subject to the terms and conditions of that agreement." Plaintiff is stating that the deposit is to show sincere interest, and that a sales agreement has not been finalized or executed. Additionally, Plaintiff understands that the sale has not been finalized by making the deposit refundable until such time as the parties draw up a final contract for the aircraft, and then the deposit is to be incorporated into the price of the plane.

Plaintiff, on the second page of the letter, establishes a deadline for the offer to expire, stating that the "offer, if accepted and executed shall become null and void as of 5:00 P.M. EDT, Monday, June 28, 1999, if the parties have not agreed to and executed a definitive sales agreement prior to that time."

The letter was faxed to Defendant on June 19, 1999. On June 21, 1999, Defendant sent

6

Plaintiff a Draft of a Purchase Agreement. Plaintiff returned the Purchase Agreement with several changes on June 23, 1999. The Purchase Agreement was never finalized and was never executed by the parties. Therefore, the terms of the offer in the June 19, 1999 letter were never complied with, a definitive sales agreement was never executed, and the offer became null and void on June 28, 1999. There was a failure by both parties to negotiate mutually agreeable terms and conditions of the sale, and to timely execute and deliver a definitive sales agreement in form and substance mutually agreeable to the parties.

"In the final analysis, the issue boils down to one of intent. The Court must determine whether or not, at some point in time prior to the execution of a final agreement, the parties manifested an intent to be bound in contract and, if so, what the scope of their agreement was." Chrysler Capital, 697 F.Supp. at 800. The scope of the letter was an offer by Plaintiff to Defendant to begin final negotiations and attempt to finalize a sales agreement. The offer was never properly accepted, and the contract was never executed.

The Court notes that "the mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event." T.C. V'Soske v. E.T. Barwick, 404 F.2d 495, 499 (2nd Cir. 1968); Smith v. Onyx Oil and Chemical Co., 218 F.2d 104 (3rd Cir. 1955). However, "[t]he law is clear that although the parties may intend to enter into a contract, if essential terms are omitted from their agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result." Id.; Willmont v. Giarraputo, 5 N.Y.2d (1959). The letter that contained the offer was a little longer than one (1) page. The negotiations revolved around a $7,000,000 airplane,

and the parties exchanged a thirteen (13) page proposed agreement[1] that contained terms and proposals that were not mutually agreeable. Therefore, although the letter was clear as only an offer, the letter was not definite enough to be an enforceable contract.

"To establish a breach of contract, a party must show the existence of a contract, a breach thereof, and damages." AIB Mortgage Company v. Larry Sweeney, 687 So.2d 68, 69 (Fla. 3rd DCA 1997); Knowles v. C.I.T. Corp., 346 So.2d 1042 (Fla. 1st DCA 1977); Miller v. Nifakos, 655 So.2d 192, 193 (Fla. 4th DCA 1995). Plaintiff cannot establish the existence of a contract. Therefore, Plaintiff is unable to show a breach of that contract.

### C. Breach of Warranty

Plaintiff's claim of Breach of Warranty of Good Faith, Fair Dealing and Commercial Reasonableness depends on a valid contract. These provisions do not exist absent a valid and binding contract. Lakeville Pace Mech., Inc. v. Elmar Realty Corp., 714 N.Y.S.2d 338, 342 (App. Div. 2000); Bernstein v. True, 636 So.2d 1364, 1366 (Fla. 4th DCA 1994). Therefore, Plaintiff is unable to state a claim in Count II.

### D. Breach of Duty to Negotiate in Good Faith

Plaintiff's last claim is for Breach of Duty to Negotiate in Good Faith. In the Complaint, Plaintiff alleges that, "[b]y entering into the contract, International Paper implicitly agreed to negotiate in good faith a definitive agreement for the sale of the aircraft on terms consistent with the terms of the contract." Complaint at 6. The Court's determination that the letter does not constitute a contract forestalls Plaintiff's claim that Defendant agreed to negotiate in good faith,

---

[1] The thirteen pages includes exhibits.

8

because the parties did not enter into a contract. Therefore, the allegations in the Complaint cannot be proven.

The Court notes that Plaintiff's claim would more properly allege a cause of action for failure to negotiate in good faith under New York law. New York law states that where the parties have consented to be bound as to essential terms and significant terms remain for future negotiations, "the parties do not yet have an enforceable contract as to all terms but do have a further duty to negotiate in good faith toward resolving those that are left unresolved." Chrysler Capital, 697 F.Supp. at 800; V'Soke, 404 F.2d at 499. The parties in this action, however did not agree to be bound as to the essential terms of the agreement. Plaintiff made an offer to purchase the aircraft and Defendant sent a sales agreement to finalize a deal. Plaintiff disagreed with certain terms of the agreement, and the contract was never executed.

### III. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment is hereby **GRANTED**;

2. The above styled action is hereby Dismissed, with prejudice;

3. All pending motions are denied as moot; and

4. This case is closed.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this ____ day of February, 2001.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

David Harris Reimer, Esq.
Richard C. Hutchison, Esq.

Copies furnished to:

David Harris Reimer, Esq.
Richard C. Hutchison, Esq.